IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LESLIE FORDIN; JONATHAN FORDIN; and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM<br><br>Plaintiffs<br><br>vs.<br><br>W RETREAT & SPA-VIEQUES ISLAND; W HOTELS WORLDWIDE AND STARWOOD HOTELS & RESORTS WORLDWIDE, INC.; EL CAPITAN LUXURY BOAT RENTALS & PRIVATE CUSTOM DAY CHARTERS and DOUGLAS J. MAURRAS<br><br>Defendants | CIVIL NO.:<br><br><br><br>DAMAGES |

## COMPLAINT

**TO THE HONORABLE COURT:**

COME NOW plaintiffs, through their undersigned attorney, and very respectfully states, alleges and prays:

### JURISDICTION AND VENUE

1. The diversity jurisdiction of this Honorable Court is invoked under the provisions of Title 28, United States Code, Section 1332(a)(1), and Article III, Section II of the Constitution of the United States, inasmuch as the parties are citizens of different states and the amount in controversy exceeds the sum of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs and interest.

2. Venue is proper because the facts which give rise to the complaint occurred within the District of Puerto Rico.

## THE PARTIES

3. Plaintiffs Leslie Fordin and Jonathan Fordin are of legal age, married to each other and residents and citizens of the State of North Carolina.

4. Defendant W Retreat & Spa - Vieques Island is a legal entity incorporated, organized and existing under the laws of the Commonwealth of Puerto Rico, and which has its principal place of business in the Commonwealth of Puerto Rico, to wit, ownership and operation of W Retreat & Spa – Vieques Island located in Vieques, Puerto Rico.

5. Defendant W Hotels Worldwide and Starwood Hotels & Resorts Worldwide, Inc. is a corporation or other legal entity organized and existing under the laws of Connecticut, and has its principal place of business in the state of Connecticut, which owns, operates, franchises, and manages hotels, resorts, spas, residences and vacation ownership properties under its nine owned brands, and which owns and operates the "W Retreat & Spa – Vieques Island".

6. Defendant El Capitán Luxury Boat Rentals & Private Custom Day Charters is a legal entity incorporated, organized and existing under the laws of the Commonwealth of Puerto Rico, and which has its principal place of business in the Commonwealth of Puerto Rico, and which owns and operates the M/V "NOSTALGIA", a 1996 31 foot Aronow Marine speedboat, upon the navigable waters of the United States in Puerto Rico and the Caribbean.

3.

7. Defendant Douglas J. Maurras (hereinafter "Captain Maurras") is a citizen and resident of the Commonwealth of Puerto Rico, who at the time of the events underlying this lawsuit, was the Master in charge of the operation of the M/V "NOSTALGIA".

## FACTS

8. The plaintiffs Leslie and Jonathan Fordin were married at "El Conquistador" Hotel, in Fajardo, Puerto Rico.

9. At the time of the wedding, plaintiffs were both 29 years old, were physically and emotionally healthy, fit, and were very happy to start their new married life.

10. After the wedding, plaintiffs Leslie and Jonathan Fordin stayed at W Retreat & Spa – Vieques Island, in the room known as the "Spectacular Ocean View Oasis", from February 27, 2012 to March 1st, 2012.

11. Upon arrival, plaintiffs Leslie and Jonathan Fordin were excited about the amenities and enjoyed the sand, water and dinner on the beach.

12. On February 27, 2012 the plaintiffs approached the W Vieques concierge and asked about any available, tours, excursions and/or snorkeling opportunities that might be offered through the hotel.

13. The concierge handed plaintiffs Leslie and Jonathan Fordin two flyers/advertisements, one for an excursion to Culebra with El Capitan Luxury Boat Rentals & Private Custom Day Charters ("El Capitán") and another for sailboat lunch and snorkeling.

4.

14. The concierge booked a "bio bay" tour and also offered to book the Culebra excursion, but plaintiffs Leslie and Jonathan Fordin needed time to schedule their day and decided to call "El Capitán" on their own.

15. Plaintiffs Leslie and Jonathan Fordin called "El Capitán" later the same day, February 27th, 2012, and said they were staying at the W Vieques and would like to take an excursion on the next day, February 28th. Although plaintiff Leslie Fordin would have preferred the sailboat, they were told that only the Aronow Marine 313 ("Aronow") was available on that day.

16. Plaintiffs Leslie and Jonathan Fordin read the literature provided by the W Vieques concierge, which states that "[t]he Aronow Marine 313 is built for rough offshore conditions to ensure a smooth, dry comfortable ride", and that made plaintiffs feel secure about taking that boat.

17. On February 28, 2012 the conditions were choppy when plaintiffs Leslie and Jonathan Fordin boarded the Aronow, but neither of them had any substantive experience with ocean power boating and so they trusted in Douglas J. Maurras, the captain supplied by "El Capitán". On the trip from Vieques to Culebra, the sea conditions were rough and the power boat was operated at high speed into the oncoming waves and into the north easterly wind.

18. Plaintiffs Leslie and Jonathan Fordin were never warned of any hazards. However, about halfway to Culebra, as the vessel flew into the head sea, plaintiffs begin getting nervous that Douglas was driving too fast. The water was rougher than plaintiffs had anticipated, and Douglas continued driving at high speed notwithstanding the rough conditions of the sea.

19. At one point, plaintiff Jonathan Fordin asked Douglas whether he was driving too fast for conditions; he agreed and slowed down slightly, but not enough. Instead of the "smooth, dry comfortable ride" plaintiffs were promised, they were soaked the entire time and anything but comfortable.

20. Nonetheless, Douglas continued to speed towards Culebra as if they were on a tight schedule, while the conditions worsened and they began to get slammed around.

21. Plaintiff Leslie Fordin was extremely scared and Jonathan who usually was the brave one, was also quite scared.

22. About two thirds of the way to Culebra, they hit three sets of waves in a row, each of which slammed the boat down harder than the one before.

23. Plaintiffs Leslie and Jonathan Fordin were reeling from the impact of the first two sets of waves when the third launched the Aronow high into the air. Plaintiff Leslie Fordin screamed as both plaintiffs were lifted up over the

seats of the boat. The boat slammed down on the left side first. The hull was cracked. The seats on the left side of the boat, previously anchored down with large metal bolts, were completely torn out. The fuel gauge was broken. The boat was in shambles.

24. Plaintiff Leslie Fordin was on the left side of the boat when her back slammed down on the boat.

25. Plaintiff Leslie Fordin was screaming and writhing in pain. Captain Douglas J. Maurras continued the journey to Culebra, and subsequently returned plaintiffs to Vieques.

26. Plaintiffs knew something was badly wrong with Leslie's back, but they didn't know to what extent. They were in shock; this was the worst accident they had ever incurred and it happened on their honeymoon. At that point, plaintiffs Leslie and Jonathan Fordin hoped it was just a bad contusion or maybe Leslie threw her back out and they tried to make the best of the situation.

27. Plaintiff Leslie Fordin was down on her back the entire next day and hobbled around until they left Puerto Rico on March 1, 2012.

28. By the night of March 1, 2012, plaintiffs Leslie and Jonathan Fordin knew something was seriously wrong with Leslie's back; this was more than a

strain or a bruise and the pain continued to get worse.

29. Immediately upon arriving in North Carolina plaintiffs Leslie and Jonathan Fordin sought out an emergency room and they received confirmation that Leslie's back was broken at the T10 vertebra.

30. Since then, doctors have become a part of plaintiffs Leslie and Jonathan Fordin's daily life.  Plaintiffs Leslie and Jonathan Fordin have been through the initial emergency room visit, x-ray consultations, surgeon consultations, chiropractic services, a back brace for 4 months and myriad prescription medications.

31. Plaintiff Leslie Fordin was bed ridden for 8 weeks and plaintiff Jonathan Fordin needed to care for her wife in every way, including:  helping her to wash, dress, and perform her daily functions.  This was their newlywed experience.

32. Due to Leslie's pain as a result of her fracture, plaintiffs' plans to have their first child this year and the second three years later have been forced to wait.

33. Plaintiff continues to receive medical treatment and has not recovered and probably will never fully recover from her injuries.

34. The emotional trauma plaintiffs Leslie and Jonathan Fordin are suffering has forced them to seek psychological help.

35. Plaintiff Leslie Fordin will never, ever be the same again.  She has a crushed

vertebra, will live with pain and physical limitation for the rest of her life; plaintiff Leslie Fordin has a permanent disability, and loss her dignity and enjoyment of life forever.

36. Plaintiffs have incurred and will incur, possibly for life, in medical and other expenses for plaintiff Leslie's Fordin physical therapy and pain management, and to cover the special needs she now has (special chairs, pillows, etc.).

37. As a result of the incident described herein, plaintiff Leslie Fordin suffered, is suffering and will suffer physical and emotional damages, including but not limited to physical pain, discomfort, anxiety, mental anguish, sleeplessness, loss of enjoyment of life, loss of mobility and disability, the monetary value of which should be determined by the jury.

38. As her husband, plaintiff Jonathan Fordin share her pain and suffering, and have experienced emotional distress as a result thereof.

39. Plaintiffs Leslie and Jonathan Fordin also have suffered damages to their professional reputations due to the need to cancel work and work-related meetings, etc.

40. As a result of the incident described herein, plaintiffs have incurred out-of-pocket expenses for medication, treatment, etc. and it is expected that they will incur more expenses in the future.

## CAUSE OF ACTION

41. The allegations of the preceding paragraphs are incorporated by reference as if

set forth in their entirety.

42. Defendant W Retreat & Spa - Vieques Island, owed a duty of care towards plaintiffs Leslie and Jonathan Fordin to ensure that their staff only recommended to their guests excursions, tours and sea trips operated by responsible and properly trained individuals who are aware of the hazards involved in operating a power boat at high speed on the open sea, and take all necessary measures and precautions to safeguard the physical integrity of their passengers.

43. As owners and operators of the W Retreat & Spa - Vieques Island, the defendant W Hotels Worldwide and Starwood Hotels & Resorts Worldwide, Inc. owed a duty of care towards plaintiffs Leslie and Jonathan Fordin ensure that their staff only recommended to their guests excursions, tours and sea trips operated by responsible and properly trained individuals who are aware of the hazards involved in operating a power boat at high speed on the open sea, and take all necessary measures and precautions to safeguard the physical integrity of their passengers.

44. As owners and operators of the M/V NOSTALGIA, El Capitán Luxury Boat Rentals & Private Custom Day Charters owed a duty of care towards plaintiffs Leslie and Jonathan Fordin to ensure that their staff, specifically the captains hired to operate the vessel during excursions, tours or sea trips, were responsible individuals and appropriately trained to understand the limitations of the vessel under various sea conditions, as well as the hazards to passengers

of operating the vessel at excessive speed in heavy seas.

45. As the captain of M/V "NOSTALGIA", Douglas J. Maurras owed a duty of care towards plaintiffs Leslie and Jonathan Fordin to operate the vessel properly and safely during the sea trip from Vieques to Culebra, taking into account the sea and wind conditions, the vessel's speed and structural characteristics, and above all the safety of its passengers.  Specifically, he had a duty to avoid excessive speed in heavy seas because he knew it might result in damage to the vessel and/or the passengers.

46. Under Article 1802 of the Civil Code of Puerto Rico, the defendants had the duty to exercise reasonable care, such as might be exercised by a good family father.  Under Articles 1802 and 1803 of the Civil Code of Puerto Rico, the defendants are jointly and severally liable for all damages caused by the negligence of their agents and employees.

47. It was reasonably foreseeable to the defendants that operating the M/V NOSTALGIA at excessive speed in heavy seas posed a substantial risk of injury to passengers.

48. The defendants W Retreat & Spa - Vieques Island, W Hotels Worldwide and Starwood Hotels & Resorts Worldwide, breached their duty of care towards plaintiffs by selecting and/or recommending a tour operator that was neither responsible nor properly trained, who was either unaware of or consciously disregarded the hazards involved in operating a power boat at high speed on the open sea, and who failed to take all necessary measures and precautions to safeguard the physical integrity of the plaintiffs.

49. The defendants El Capitán Luxury Boat Rentals & Private Custom Day Charters and Douglas J. Maurras breached their duty of care towards plaintiffs by operating the M/V NOSTALGIA at excessive speed in the open sea and failing to take all necessary measures and precautions to safeguard the physical integrity of the plaintiffs.

50. All damages suffered by plaintiff are the direct, proximate and foreseeable consequence of the actions, omissions, negligence and breach of duty of the defendants.

51. The plaintiff did not cause or contribute to the occurrence of the incident described above, nor did they cause or contribute to the damages alleged.

52. To the extent the defendants deny liability for the damages claimed herein, they act with obstinacy and temerity and are therefore liable for prejudgment interest, costs and attorneys' fees.

53. Pursuant to the Seventh Amendment and Fed.R.Civ.P. 38, plaintiff demands trial by jury of all triable issues in this case.

**WHEREFORE**, plaintiffs respectfully request that the Honorable Court grant the present complaint and award damages to them, exclusive of prejudgment interest from the date of this filing, costs and reasonable attorneys' fees, in the amount of SIX MILLION DOLLARS ($6,000,000.00), plus costs, attorneys' fees and prejudgment interest.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 27th day of February, 2013.

12.

S/Manuel San Juan

_____

MANUEL SAN JUAN
USDC-PR No.: 204706
P.O. Box 9023587
San Juan, Puerto Rico 00902-3587
Tel.:(787) 723-6637 / (787) 723-6669
Fax:  (787) 725-2932